## RUCKS *et al. v.* LEONIDAS TAYLOR *et al.*

1. RIGHTS OF FORFIGN SURETIES AGAINST PRINCIPAL.—A security upon property in this State, given to indemnify sureties who live in another State, as against whom in that State a remedy at law exists on the debt, and who have been compelled to. pay the same or any part thereof by a judgment at law, may main·ain a suit in equity in this State. on the mortgage, to reimburse themselves for whatever has been paid ; and it is no defense that the creditor has lost his remedy at law upon the note or bond, and also upon the mortgage against the principal debtor and mortgagor in this State.

2. RIGHTS OF SENIOR MORTGAGFE.—A senior mor'gagee, who is no party to the suit of a junior mortgagee, to foreclose, may enjoin the execution of the decree, and may establish his right to appropriate the mortgaged property to his debt.

3. STATUTE OF LIMITATIONS.—The law of the domicile governs as to the statute of limitations, and the statute commences to run whenever the right or cause of action accrued.  Yarnell v. Moore & Davis, 3 Caldwell, 174.

4. REMEDY IN BEHALF OF SURETIES—WHEN IT ARISES.—It is well establ'shed that a remedy in behalf of the surety, either at law against his principal, or in equity upon an indemnity given to himself, or to be subrogated to one given by the principal to the creditor, arises whenever there has been a breach of the indemnifying contract.  If the surety pays the debt, his cause of action immediately arises, and the statute begins to run.

5. FOREIGN ADMINISTRATOR—HIS POWER, ETC.—An administrator appointed in another State has no authority to intermeddle with assets in this State.  The principle applies more especially to causes of action which accrued to the intestate or testator.

6. EFFECT OF A JUDGMENT RECOVERED BY A FOREIGN ADMINISTRATOR.—A judgment recovered in one jurisdiction, by an administrator or executor, may be the foundation of a personal suit in another State.  Bonafores v. Walker, 2 Dun. and East, 127 ; Douglas v. Weilate, Douglas R., 4, n. 1.

7. POWER OF ADMINISTRATOR TO SUE, ETC.—It is well settled in this State that an administrator can sue in his personal right upon a promissory note payable to himself as administrator and in which he has no personal interest.  The same principle applies where a note or bond is assigned to him specially as administrator.

Appeal from the chancery court of Hinds county, first district.  Hon. E. W. CABANISS, Chancellor.

The opinion of the case contains a sufficient statement of the case.

*Frank Johnston* and *W. L. Nugent*, for appellants :

1. Insisted, that if the deeds in trust to indemnify the sureties, were a security which attached itself to the debt and became a trust for the payment of the debt itself, and

which vested in the complainant an unconditional right to directly enforce the trusts for the satisfaction of their claim, that right is barred by limitation. And this construction is apparent, from the fact that these instruments declare that the property shall constitute a perpetual fund out of which the debt and every installment thereof shall be paid, and do not contain any condition that they were to become void in the event the sureties were released or not damnified. The two deeds must be construed together.

The creditor had an unconditional right at the maturity of the note in January 1850, upon the failure of the makers to pay, to enforce this trust either through the trustees, or, in the event they failed or refused to act, through the medium of a court of chancery. Where the security is intended as a pledge for the payment of the debt, a court of equity will treat it as a trust for the creditor, and the latter can avail himself of it as a trust created for the security and payment of his claim. Osborne v. Noble, 46 Miss., 443. The sureties cannot release the security or do any act that would affect the right of the creditor. Osborne v. Noble, *supra*, 7 S. & M., 765; 18 Ohio, 46.

2. If the complainants seek to reach the trust fund through the sureties, by subrogation, they can have no higher rights than sureties themselves possessed, and their rights are to be tested by the rights and equities of the sureties. Osborne v. Noble, 46 Miss., 446; Bush v. Stamps, 26 Miss., 446; Coyle v. Davis, 20 Wis., 564; Davis v. Minoo, 1 How., (Miss.) 103, cited on illustration.

3. The complainants cannot maintain this bill in their capacity as heirs at law of Robert Taylor. The executor or administrator alone can collect the personal assets of his decedent. I Williams on Executors, (Am. Notes,) 700, 702 note. If therefore the executor of Robert Taylor is a necessary party to the bill, then Leonidas Taylor should have been joined in that capacity. This could not have been done without first complying with the law of this State in relation

to foreign executors and administrators.   Rev. Code of 1857, p. 457. art. 131; Rev. Code of 1871, § 1189,

4. The trustees are the proper persons to execute the trust in the event the complainants are entitled to have a sale at all.

*W. P. Harris,* for appellees :

1. The judgment recovered in the circuit court of the United States in Tennessee by Leonidas Taylor, executor of Robert Taylor, deceased, gave him a legal title to it, which he could enforce by suit in his individual character, in this State.   4 Mass., 612; 1 Pet., 692; Eckford v. Hogan, 44 Miss., 398.

2. As to the limitation in this, the *lex fori* of the judgment must govern. In Tennessee, where judgment was rendered. bonds and judgments have no positive limitation.

3. The creditor was entitled to avail himself of any property under the control of the surety, and placed there to pay the debt. Ross v. Williams, 7 S. & M., 753; Carpenter v. Bowen, 42 Miss., 28; Dick v. Maury, 2 S. & M., 448; Daniel v. Joiner, 3 Ired. Eq., 513. The provision that the property shall stand as a permanent fund to pay the debt is a provision for the surety, to whom, or for whose benefit the deed was given.

SIMRALL, J., delivered the opinion of the court:

In 1836, Rucks, Gibbs, and Owen conveyed in trust to Ewing and Meigs a large number of slaves, and two tracts of land.   This trust was created to secure Walton, Jacob S. Yerger, Trabue, Onilesiss Nany, Ridley Overton, Lewis Taylor, Edmund Rucks and C. B. Hubbard, sureties for the grantors on sundry bonds, in installments given to Robert Taylor for slaves sold by him to James Rucks, Gibbs and Owens, and amounting in the aggregate to $71,161.00.

The grantors in addition to the stipulation to indemnify and save harmless their sureties, constituted by another clause of the deed, the property with its increase, a fund out of

which the debt and the several installments thereof, as they became due, should be paid. Power is conferred upon the trustee, upon the contingency of the maturity and non-payment of any installment to make a sale.

Two distinct trusts are raised, first for the indemnity, and saving harmless of the sureties, second for the protection and payment of the debt itself. By means of the latter, a distinct trust is impressed upon the property for the benefit of the creditor, which he can enforce whenever the condition arises of the maturity and non-payment of the debt. Osborne v. Noble, 46 Miss., 446.

Nine years after this transaction, April 23, 1845, James Rucks and William Yerger bought out the interests of Gibbs and Owens, in the slaves, and on the same day conveyed in trust to the same trustees, Ewing and Meigs, a tract of land in Washington county in this State, sundry slaves, and other effects. This deed recites and adopts the terms, purposes and powers contained in the conveyance of Rucks, Gibbs and Owens, and was not to become void and inoperative, until the entire original debt of Rucks, Gibbs and Owens to Robert Taylor was paid.

The effect of this deed, was to devote the property therein mentioned to several trusts. First to indemnify Gibbs and Owens, who were still bound personally on the bonds to Taylor, and whose property, in part, was still subject to the lien created by the deed of 1836. Secondly it imposed upon the property all the burdens and equities declared in the deed of 1836, pledging the property expressly as security to Taylor, and also as indemnity to the sureties on the bonds. It must be noted in this connection, that Rucks and Yerger did not take up the original bonds, but that Gibbs and Owens continued liable as principals, and the other parties as sureties.

Stripping the transaction of the technical phraseology in which it is clothed, and stating it in its simplest form, it is this, Rucks and Yerger, by their purchase from Gibbs and Owens, substitute themselves to all the duties and obligations,

which Gibbs and Owens had assumed to Taylor, the creditors, and to their sureties in the bonds, and since Gibbs and Owen were not released as debtors, if because of it, they suffered harm or loss, they were to be indemnified.

It is averred in the bill, that the parties to the original sale, insisted that Rucks and Yerger, upon their purchase, should give a security, and the conveyance of 1845, was executed for that purpose. The terms of that security brought Rucks and Yerger in direct relation with Taylor, the creditor, and with Gibbs, Owens, and the sureties on their bonds. These sub-purchasers give a lien directly to Taylor, the creditor, capable of enforcement at his suit. He might pass by the original indemnity, and proceed directly for the execution of the last trust. For him it is a cumulative security. As to Gibbs and Owens, Rucks and Yerger became principal debtors, engaging that the property embraced in the deed, shall be bound directly to their creditor, assuming that the debt shall be paid, and that they shall suffer no detriment, by reason of their continued obligation therefor. The language of the deed is explicit on this point, " by which (that is the purchase by them of the interest of Gibbs and Owens.) the said Rucks and Yerger became principal debtors to Taylor, and bound to indemnify said Gibbs and Owens."

The defendants, the bank of Kentucky, Scott, and the representatives of Reese, who are junior mortgagees, and who have without notice to the complainants obtained a decree to foreclose their mortgage, demur to the bill on several grounds; among others, that the complainants are barred by the statute of limitations.

In 1868, Leonidas Taylor, the executor of Robert Taylor (who had died), recovered a judgment in the circuit court of the United States, in the middle district of Tennessee, against Broomfield & Ridley, one of the sureties, for $14,158.18, the amount due on the last bond, which matured in 1850. Ridley filed an original bill in chancery in the same court, to be relieved from this judgment, on the allegations that Rucks and Yerger had either paid the debt, or made some arrange-

ment for an extension of time, which released him as surety. The executor answered the bill, denying the equity. In this position of affairs, Ridley applied to Gibbs to relieve him from the pressure of the debt. Negotiations were opened between Gibbs, Leonidas Taylor, the executor, and Ridley, which resulted in an agreement that Gibbs would pay to the executor $5,000.00, and that he and Ridley should assign to him, Charles H. R. Taylor, and Architola Taylor, who were the beneficial owners of the debt, all their rights, and equities, under the conveyance made by Rucks and Yerger, and that no further prosecution of the judgment recovered against Ridley should be made.

The complainants ground their right to priority over the second mortgages, on this agreement. The defendants say, if the complainants acquired anything, it has been barred. As we have seen, all the obligors of the bonds to Robert Taylor remained bound to him, notwithstanding the sale by Gibbs & Owen to Rucks and Yerger, and contined to sustain towards each other the relation of principal and surety. Ridley, at the time the recovery was had against him, was still the surety of Rucks, Owen and Gibbs. Upon payment of the debt, or any part of it, he had an unquestioned right, to demand from them, or their legal representatives, reimbursement, either in a court of law, or by resort to the security made by the principal debtors in 1836, or the subsequent indemnity of Yerger and Rucks. What further redress he might have obtained in equity, seeking to compel the creditor to proceed against the trust property, in the first instance, need not be considered.

But this view of Ridley's rights are sought to be avoided by an invocation of the statutes of limitations of this State. The statute operates where the right or cause of action accrued. It must be borne in mind, that the security made in 1836 included property in Tennessee, in Arkansas, and in this State. Some of the sureties, including Ridley, resided in Tennessee. If suit had been brought in this State, upon the bond due in 1850, against James Rucks, he could suc-

cessfully have pleaded the statute. So too, if proceedings had been instituted to enforce the security, for a failure to pay that installment, the same defense might be successfully made. But because the debt may be barred here, as against the principal debtors, does that relieve them from their engagements to save harmless those who stand in the relation of sureties to them?

Their indemnity made in 1845, to be of sufficient value to the sureties, must be coextensive with their obligations, and must be of force, so long as they were legally bound to the creditor. But Gibbs, Owen & Ridley, together with the trustees, were residents of Tennessee, and have so continued to be. The obligors on the bonds were liable to suit at the place of their residence. Manifestly, an indemnity given by the principal debtor resident in this State, for the protection of sureties resident in Tennessee, must continue, at least so long as a remedy against the sureties subsists by the laws of Tennessee. But the law of Tennessee did not bar the remedy until sixteen years after the debt was due. Yarnell v. Moore & Davis, 3 Coldwell, 174. The suit against Ridley was brought in due time. If Ridley was the complainant in this suit, on the allegation that he had paid this judgment, in whole or in part, neither the heirs of Rucks and Yerger, nor the junior mortgagees, could successfully interpose the defense of the bar of our statute, because, as we have seen, the indemnity for Ridley was effective and valid, so long (at least) as the debt was not barred by the law of the place of his domicile. The creditor had as clear a right to sue, the last year or day that his remedy subsisted, as on the day of the accrual of his cause of action.

It is so familiar a principle that it is not necessary to refer to authority, that a remedy in behalf of the surety either at law against his principal, or in equity, upon an indemnity given to himself, or to be subrogated to one given by the principal to the creditor, arises where there has been a breach of the indemnifying contract. If the surety pay the debt, his cause of action immediately arises, and the statute

begins to run. In this case, the law which applied to Gibbs and his assignees, the complainants, was the statute of this State. A statute of limitations pertains to the remedy, which is regulated as to the form and duration by the law of the forum. It is a mistake of the rights of the parties, to claim that, because there was no remedy here, because of the bar of the statute, for the creditor on the security of 1845, therefore the surety who was compelled to pay in Tennessee in 1868 was subject to the same limitation.

By arrangement between the complainants and Gibbs and Ridley, the complainants agreed to accept $5,000.00 from Gibbs, in satisfaction of the recovery against Ridley; or, rather, to abandon that judgment, and take no steps for its satisfaction; also to surrender all lien and claim upon Gibbs' land in Tennessee, included in the deed of trust; and to resort to the fund in Mississippi, raised by Rucks and Yerger, in their conveyance of 1845, Gibbs and Ridley assigning to them all their claims, rights and remedies under and by reason of that conveyance.

The result of this arrangement was that Gibbs and Ridley, and, perhaps, the other sureties on the bonds, were released and discharged from further liability; the complainants were paid $5,000.00 by Gibbs on the debt, and the complainants were invested with whatever rights either or both of them had against the parties and property in this State. Nor does it matter whether the money was paid by Gibbs or Ridley. The trust of 1845, placed the property of Rucks and Yerger as the primary fund for the payment of the debt, they thereby assuming towards Gibbs and Owen the relation of principal debtors, and expressly agreeing that the security then created shall be an indemnity for them, as well as the sureties on the bonds. Naturally, Ridley would call upon Gibbs, his principal debtor, to relieve him of the judgment. Gibbs being under an implied duty and obligation to save harmless his surety, as well as bound by his conveyance of 1836, paid what the creditor was willing to accept on the terms set forth in the agreement. The considerations

therein expressed induced Gibbs and Ridley to substitute, by assignment, the complainants to their rights and remedies under the deed of 1845. The heirs of Rucks and Yerger cannot complain, for the property, the land in controversy, descended to them charged with the burden of indemnifying Gibbs and Owen and their personal sureties. The junior mortgagees took their security with notice of this incumbrance, and are chargeable with the knowledge of its scope and extent.

The complainants were not parties to the foreclosure suit brought by the junior mortgagees, and are, therefore, not prejudiced by the decree. It is eminently proper that the equities of parties claiming respectively under the senior and junior encumbrances should be canvassed and settled, that the property may be offered at the sale unembarrassed as to the title, so as to insure its value and forestall future litigation.

But it is urged by the appellants that these complainants have no right to maintain this suit, because no legal representative of Robert Taylor has been appointed in this State. Leonidas Taylor, the executor in Tennessee, has, it is said, no authority to intermeddle with the assets in any other State. The general principle is as contended for, but applies more especially to causes of action which accrued to the intestate or testator. In an action for an escape of a debtor taken in execution by the sheriff, upon a judgment recovered by the administratrix, she may sue in her personal right; "for the instant she recovered judgment against the original debtor, it became a debt due to her upon record, and was assets in her hands, for which it was not necessary for her to declare as administratrix.' Bonafores v. Walker, 2 Dunford & East, 128 ; Douglas v. Whitall, Douglas, 4, n. 1. The precise objection insisted upon here was urged in Biddle v. Wilkins, 1 Peters' Rep., 692 and 693, and Talmage, administrator, v. Chapell *et al.*, 16 Mass., 72 ; but did not prevail, for in the former case, it is said, after judgment recovered, "it is considered a debt due the plaintiff in his

personal capacity." The principle rests upon abundant authority that a judgment recovered in one jurisdiction by an administrator or executor may be the foundation of a personal suit in another State. The allegation of the bill on this subject is to the effect that Leonidas Taylor and the other complainants were the substantial owners of the judgment recovered against Ridley and the bond upon which it was founded, and the assignment made by Gibbs and Ridley was to Leonidas Taylor, executor, and the other complainants, they having the entire beneficial interest in the debt. The immediate cause of the suit, asserted by the complainants, accrued not to the testator, but arose after his death. It has long been settled in this State that an administrator can sue in his personal right upon a promissory note payable to himself as administrator, and in which he has no personal interest. The same principle applies where a note or bond is assigned to him specially as administrator. Here the cause of action was assigned to Leonidas Taylor, as executor, and his co-complainants, the three having the whole interest in the money. If the substitution had been to Leonidas Taylor alone, as executor, he might have sued in our courts without taking out letters of administration. We are of opinion that the complainants may maintain this suit.

There is no error in the decree of the Chancellor, and it is affirmed.