[No. 12626.  In Bank. — December 2, 1889.]

SOLON HUMPHREYS ET AL., RESPONDENTS, v. PETER HOPKINS, APPELLANT.

ATTACHMENT — BAILMENT — PROPERTY IN CUSTODY OF FOREIGN RECEIVER. — Property in this state cannot be secured from attachment at the suit of the creditor of the owner by being placed in the possession of a bailee; and the sole question between the bailee and the attaching creditor is one of superiority of right. Property of a railway company in the lawful custody of a foreign receiver, if brought into this state by him in the course of business, is subject to attachment under its laws by a creditor of the company, resident in this state, and the rights of the receiver must depend upon the comity of this state. (THORNTON, J., and McFARLAND, J., dissenting.)

ID. — COMITY — REPLEVIN BY FOREIGN RECEIVER. — A receiver appointed by the court of another state, for the benefit of creditors therein residing, can only sue in this state as such receiver on the ground of comity; and such comity will not be so extended as to sustain a suit by him to replevy property of the debtor which was attached in this state by a creditor residing therein, though the property when attached was in the actual possession of the receiver, and brought by him from the state where he was appointed in the course of business. (THORNTON, J., and McFARLAND, J., dissenting, hold that the lawful possession of the property acquired by the receiver in the state of his appointment gave him a special property, which precluded an attachment by a creditor of the original owner in any state, while the property remained in the receiver's custody, and conferred a title upon which he could sue and recover the property, in his individual capacity, as a matter of right, in any state into which he might take the property in the course of lawful business.)

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Frank M. Stone,* for Appellant.

*T. Z. Blakeman,* for Respondents.

BEATTY, C. J. — The plaintiffs in this action are receivers of the road and other property of the Wabash, St. Louis, and Pacific Railway Company. They were appointed by the United States circuit court for the eastern district of Missouri, May 25, 1884, by an order

made in an action to which the railway company was a party, and were thereby authorized to take possession of said road, to manage, control, and operate it, and preserve and protect all its property. At the date of their appointment a certain freight-car belonging to the company was at Toledo, in the state of Ohio, where, on the 29th of May, 1884, it came into their possession. It was subsequently brought by them in the course of their business as receivers to the city of St. Louis, in the state of Missouri, a place within the jusisdiction of the court by which they were appointed. On the 16th of March, 1885, they loaded the car with freight consigned to San Francisco, intending that when the freight was unloaded at San Francisco the car should be returned to St. Louis. While the car was in San Francisco it was attached by the defendant, as sheriff of San Francisco, in a suit brought by Henry Payot and Isaac Upham against the railway company. Payot and Upham were citizens of California, resident and doing business in San Francisco.

This action was thereupon commenced by the plaintiffs to recover the car so attached. The judgment of the superior court was in their favor. Defendant appeals.

The question presented by the appeal is, whether a receiver appointed in a foreign jurisdiction to take possession of the property of a railway corporation and carry on its business, and who in pursuance of his authority as such receiver has taken the property into his actual possession within the jurisdiction of the court by which he was appointed, can hold such property against the claim of a citizen of this state, who, upon finding the property here, has, in pursuance of our laws, caused it to be attached as security for his just demands against the railway company.

Counsel for appellant contends for the proposition that a foreign receiver has no capacity to sue in his official character in our courts, but we do not understand

the authorities to sustain this extreme view.  The question, however, need not be decided in this case, for the plaintiffs, besides being receivers of the road, had an actual and lawful possession of the property at the time of its seizure, and by virtue of that possession could undoubtedly have recovered it from a mere trespasser.

But their mere possession of the property of a foreign debtor cannot be held to exempt it from the claims of attaching creditors.  A debtor cannot, by placing or allowing his property to be in the possession of a third party, screen it from attachment.  However lawful the possession of the bailee, the property is still subject to attachment or garnishment at the suit of a creditor of the owner.  Such rights as the bailee may have to the use or possession of the property, and such liens as he may have upon it, will of course be protected, but, saving the rights of the bailee, the creditor may take it.

The question in such cases, therefore, is not as to the lawfulness of the bailee's possession, or his right to recover the property from a mere trespasser; it is a question as to which right is superior,— his or the attaching creditor's.

And such is the question here.  Conceding, as we think must be conceded, that these plaintiffs could have recovered the car in controversy from a mere wrong-doer by virtue of their lawful possession at the date of the seizure, if not by virtue of their office, still it remains to be decided whether they could reclaim it from the defendant, who justifies under a writ of attachment issued at the suit of citizens of the state of California to enforce a just demand against the owner of the property.

The solution of this question depends upon the effect to be given to the order of the court of Missouri, under whose appointment the plaintiffs are acting.

For, we repeat, the *mere possession* by the plaintiffs of the debtor's property, however lawful, does not screen it from attachment.  To show a right superior to that of

creditors, they must fall back upon the order appointing them receivers, and must depend upon the comity of this state as to the effect to be allowed that order.

The substance of that order has been already stated. It does not pretend to vest the title to the property of the railroad company in the receivers, it merely directs them to take possession of and use the property for the benefit presumably of creditors of the company who have resorted to that particular forum for the enforcement of their debts.

The authorities as to the effect to be given in other jurisdictions to such orders are collected in a note to the case of *Alley* v. *Caspari,* 6 Am. St. Rep. 185. The result is summed up by the editor (p. 189) as follows: "We deduce, therefore, from a thorough examination of the cases and text-books upon the subject, that the great weight of authority is, and should be, in keeping with the decision rendered by Mr. Justice Wayne in *Booth* v. *Clark*, 17 How. 334, that a foreign receiver has no right to sue in another state; but that, on the ground of comity, the court will, in a just and proper exercise of a sound legal discretion, permit such suits to be maintained for the purpose of thereby doing justice where the good of a large number would demand it, by recognizing the orders and judgments of the courts of a sister state. But in none of the cases is such right to sue conceded, or the suit permitted to be maintained by the foreign receiver, where the claim sought to be enforced conflicts with the rights of citizens or creditors in the state where the suit is brought."

We think that the effect of the decisions is correctly stated in this extract from Mr. Freeman's note, and we think that in this case justice to our own citizens requires that we should not extend the principle of comity so far as to award this property to the representatives of creditors residing in other states, and who are seeking to hold it for their own exclusive benefit.

The judgment and order appealed from are reversed and cause remanded.

Fox, J., WORKS, J., and PATERSON, J., concurred.

THORNTON, J., dissenting.—I dissent. Action to recover a car. Trial by the court, and judgment in favor of plaintiffs. Motion of defendant for a new trial, which was denied. Appeal by defendant from judgment and order denying the motion for a new trial.

It is conceded that on the twenty-fifth day of May, 1884, the plaintiffs were by an order of the United States circuit court for the eastern district of Missouri, wherein the Wabash, St. Louis, and Pacific Railway Company was a party, appointed receivers of the railroad, and all the property of the company, with power and instructions to take possession of the railroad, and to manage, control, and operate it, and preserve and protect all its property.

It further appears that the car in suit came into the possession of the receivers above named at Toledo, Ohio, on May 29, 1884, when it was delivered by the company to the plaintiffs, as receivers, and that the receivers have used this car in carrying on the business of the railroad from that day until it was attached, as appears in this action, on the first day of April, 1885.

After the car came into the possession of the receivers, it was by them brought in the course of their business as receivers to the city of St. Louis, state of Missouri, a place within the jurisdiction of the court by which the plaintiffs were appointed. The receivers, on the sixteenth day of March, 1885, loaded the car with freight, destined for the city of San Francisco, and sent it so loaded to San Francisco, with the intent that the freight of said car might be delivered at San Francisco, and that the car might then be returned to St. Louis.

The car was brought to San Francisco, and while there

was attached by Henry Payot and Isaac Upham, citizens of the state of California, in an action wherein said Payot and Upham were plaintiffs and the above-named railroad company was defendant. Under this attachment, the defendant, as the sheriff of the city and county of San Francisco, justifies.

It is argued that the plaintiffs suing as receivers cannot maintain this action, inasmuch as a receiver cannot maintain an action out of the jurisdiction of the court which appointed him.

It may be conceded that this is the general rule, and still the plaintiffs can maintain this action. The right to sue and maintain the action is founded on the possession of the car, delivered to the plaintiffs, as receivers, by the railroad company, in May, 1884, at Toledo, Ohio, and its being taken from that place by plaintiffs in the course of their management, carrying on, and control of the business of the company, to St. Louis, where it was loaded and sent to the city of San Francisco. This possession was given by the owner of the car, the railroad company, in pursuance of the order of the court, and was never afterward disturbed by the company. The possession of the car remained in the receivers unchanged and never interfered with, until it was attached in this state, on the 1st of April, 1885. The plaintiffs, under the undisputed authority of the court making the appointment, and without challenge by the railroad company, were, during the period of this possession, using this car in carrying on the business of the railroad company. The taking possession of the car by the plaintiffs, as receivers, was lawful, and their continued possession was also lawful, and such possession vested in them as individuals a special property, on which title they can as individuals maintain this action.

This conclusion is supported both on principle and by authority.

The case of *Chicago etc. R. R. Co.* v. *Keokuk Northern*

*Line Packet Co.*, 108 Ill. 317, 48 Am. Rep. 557, is directly
in point. There the contest was between a receiver of
the property and effects of the Northern Line Packet
Company, regularly appointed by the circuit court of
St. Louis, Missouri, in an action brought against that
company and an attaching creditor, on a writ brought
in the circuit court of Adams County, state of Missouri.

The court held that the title of the receiver was good
against the attaching creditor in the state of Missouri,
and judgment was accordingly rendered in favor of the
receiver.

The court, speaking to the point, said: "The general
doctrine that the powers of a receiver are co-extensive
only with the jurisdiction of the court making the
appointment, and particularly that a foreign receiver
should not be permitted, as against the claims of credi-
tors resident in another state, to remove from such state
the assets of the debtor, it being the policy of every gov-
ernment to retain in its own hands the property of a
debtor until all domestic claims against it have been
satisfied, we fully concede, and were this the case of prop-
erty situate in this state, never having been within the
jurisdiction of the court that appointed the receiver,
and never having been in the possession of the receiver,
it would be covered by the above principles, which
would be decisive against the claim of the appellee. But
the facts that the property at the time of the appoint-
ment of the receiver was within the jurisdiction of the
court making the appointment, and was there taken
into the actual possession of the receiver, and continued
in his possession until it was attached, take the case, as
we conceive, out of the range of the foregoing principles.
We are of opinion that by the receiver's taking possession
of the barge in question within the jurisdiction of the
court that appointed him, he became vested with a
special property in the barge, like that which a sheriff
acquires by the seizure of goods in execution, and that

he was entitled to protect this special property while it continued, by action, in like manner as if he had been the absolute owner.   Having taken the property in his possession, he was responsible for it to the court that appointed him, and had given a bond in a large sum to cover his responsibility as receiver, and to meet such liability he might maintain any appropriate proceeding to regain possession of the barge which had been taken from him.   (*Boyle* v. *Townes,* 9 Leigh, 158; *Singerly* v. *Fox,* 75 Pa. St. 114.)   It is well settled that a sheriff does by the seizure of goods in execution acquire a special property in them, and that he may maintain trespass, trover, or replevin for them."

The court concludes its observations on this point as follows: "By taking the barge into his possession within the jurisdiction of the court that appointed him, a special property in the barge became vested in the receiver, and it is the established rule that where a legal title to personal property has once passed and become vested in accordance with the law of the state where it is situated, the validity of such title will be recognized everywhere."   (Citing *Carriwell* v. *Sewell,* 5 Hurl. & N. 728; *Clark* v. *Connecticut Post Co.,* 35 Conn. 303; *Taylor* v. *Boardman,* 25 Vt. 581; *Crapo* v. *Kelly,* 16 Wall. 610; *Waters* v. *Barton,* 1 Cold. 450.)   *Cagill* v. *Wooldridge,* 8 Baxt. 580, is to the same effect.   In that case the contest was also between the receiver and an attaching creditor.   The case was ruled in favor of the receiver.

A receiver of an important manufacturing company, appointed by a court in New Jersey, who took possession of its assets for the purpose of completing a bridge which the corporation had contracted to build in Connecticut, purchased iron with the funds of the estate, and sent it into that state, and it was held that the iron was not open to attachment in Connecticut by a creditor residing there.   (*Pond* v. *Cooke,* 45 Conn. 126; 29 Am. Rep. 668.)

In *McAlpin* v. *Jones*, 10 La. Ann. 562, and in *Hurd* v. *City of Elizabeth*, 4 N. J. L. 1, receivers were allowed to maintain actions without the jurisdiction of the court appointing them.   In the case cited from 10 Louisiana Annual, the receiver had been appointed by a chancery court in Mississippi; he there took possession of the property, under the order of the appointment.    A portion of the property, viz., four slaves, were stolen from the possession of the receiver, and came into the state of Louisiana.    The owner brought suit in the latter state, and its highest court adjudged that he could recover.

It may be observed that the property sued for in this case was in the possession of the receivers within the jurisdiction of the court appointing them.   The receivers got their possession in Ohio by delivery from the owner and took the car to St. Louis, where it was within the jurisdiction of the circuit court of the United States for the eastern district of Missouri.   The fact that they got possession of the car out of the jurisdiction of the appointing court cannot make any material difference, when the property was at once carried into such jurisdiction, and therein retained in their possession.   That it cannot affect the right of plaintiff to recover that the car was afterward sent by the receivers in the course of their duty and in the posecution of the business which they were appointed to carry on, see *Chicago etc. R. R. Co.* v. *Keokuk Packet Co.*, 108 Ill. 323, 324; 48 Am. Rep. 557.

In the same line of decision with the foregoing are *Low* v. *Burrows*, 12 Cal. 188, and *Lewis* v. *Adams*, 70 Cal. 403; 59 Am. Rep. 423.

In *Low* v. *Burrows, supra*, the action was brought by the assignee of a judgment recovered in New York.   The assignment was made by an administrator in New York. It was contended that the administrator in New York had no right to assign the judgment, the debtor residing at that time beyond the state of New York.   This contention was based on the ground that the authority of

the administrator did not extend beyond the state in which the letters were granted. The court disposed of this contention adversely to counsel presenting it, and it was held that the administrator, having recovered the judgment, owned it and could assign it.

In *Lewis* v. *Adams, supra,* the action was brought on a judgment recovered by the plaintiff, as the executor of the last will of one Nat Lewis, against the defendant, P. T. Adams, in the district court for the county of Bexar, state of Texas. In the complaint in this suit the plaintiff described herself as executrix of Lewis, and it was contended that she having been appointed executrix by a Texas court, her authority was confined to the state of Texas, and that she could not maintain any action in this state. It was held that the judgment recovered in Texas vested the title in her; that she was accountable to the court in Texas from which she received her appointment, and that she could maintain the action here on her own title as an individual. The whole subject is ably and fully discussed and the authorities cited in the opinion of Justice McKinstry. (See 70 Cal. 406, 407.)

In the same line of decisions is *Wilkinson* v. *Culver,* 25 Fed. Rep. 639, where a judgment was recovered by a receiver of a corporation appointed by a New Jersey court, and the receiver as owner of the judgment in his individual capacity was allowed to recover on it in an action brought in the United States circuit court for the southern district of New York. (See also *Biddle* v. *Wilkins,* 1 Pet. 686; *Talmadge* v. *Chappel,* 16 Mass. 71; *Trecothik* v. *Austin,* 4 Mason, 34, 35; *Barker* v. *Higgins,* 41 Md. 539; *Cherry* v. *Speight,* 28 Tex. 503; *Rueks* v. *Taylor,* 49 Miss. 552.) The three cases last cited were actions brought by foreign administrators on judgments which they had recovered as such administrators in their own states, and they were allowed to sue upon the judgments in their own names in the other states. (See also *Morton* v. *Hatch,* 54 Mo. 408.)

On this subject Justice Story, in his able work on Conflict of Laws, makes the following observations:—

"§ 516.  And here it may be necessary to attend to a distinction important in its nature and consequences. If a foreign administrator has, in virtue of his administration, reduced the personal property of the deceased, there situated, into his own possession, so that he has acquired the legal title thereto, according to the laws of the country, — if that property should afterward be found in another country, or be carried away and converted there against his will, he may maintain a suit for it there in his own name and right personally, without taking out new letters of administration; for he is, to all intents and purposes, the legal owner thereof, although he is so in the character of trustee for other persons.  In like manner, if a specific legacy of personal property is bequeathed in a foreign country, and the legatee has, under an administration there, been admitted to the full possession and ownership by the administrator, he may afterward sue, in his own name, for any injury or conversion of such property in another country, where the property or wrong-doer may be found, without any probate of the will there.  The plain reason in each of these cases is, that the executor and the legatee have, each in his own right, become full and perfect legal owners of the property by the local law; and a title to personal property, duly acquired by the *lex loci rei sitæ*, will be deemed valid, and be respected as a lawful and perfect title in every other country.

"§ 517.  The like principle will apply where an executor or administrator, in virtue of an administration abroad, becomes there possessed of negotiable notes belonging to deceased which are payable to bearer; for then he becomes the legal owner and bearer by virtue of his administration, and may sue thereon in his own name; and he need not take out letters of administration in the state where the debtor resides in order to maintain a suit

against him. And for a like reason, it would seem that negotiable paper of the deceased, payable to order, actually held and indorsed by a foreign executor or administrator in the foreign country, who is capable there of passing the legal title by such indorsement, would confer a complete legal title on the indorsee, so that he ought to be treated in every other country as the legal indorsee, and allowed to sue thereon accordingly, in the same manner that he would be if it were a transfer of any personal goods or merchandise of the deceased, situate in such foreign country." (Story on Conflict of Laws, secs. 516, 517.)

To support the statements of the text, the learned author cites decided cases in the notes to the sections quoted. The cases above referred to are all governed by the rule that a title to personal property once vested and duly acquired by the *lex rei sitæ* will be deemed valid, and be respected as a lawful and perfect title in every other country. (Story on Conflict of Laws, sec. 884.)

There is nothing in the foregoing in conflict with what is laid down in *Booth* v. *Clark*, 17 How. 322. In that case the action was attempted to be maintained in the circuit court for the District of Columbia on the mere order of a chancery court of the state of New York appointing a receiver. Booth, who was so appointed, failed to show that he had ever had possession of the claim or the evidences of the claim, the proceeds of which the plaintiff, Booth, endeavored to recover. On the contrary, the claim had always remained in the possession of Clark until it went into the hands of his assignee in bankruptcy, and came back to Clark's possession under a purchase by Clark at a sale made by his assignee. The court dwells on the delay of the receiver to take steps to get possession of this claim as a material fact in the case. After pointing out the means by which through the aid of the court he could have obtained

possession of this claim, it is observed in the opinion: "Such, however, was not the course pursued in this case, though the debtor was then a resident of the state of New York, and amenable to the jurisdiction of the court. No motion was made to force Clark to comply with the injunction which Camara had obtained under the creditor's bill. The matter was allowed to rest for seven years, Camara being aware that Clark had a pecuniary claim upon the republic of Mexico, at least as early as the year 1843. The receiver during all that time took no action."

The essential nature of the action in *Booth* v. *Clark* is correctly set forth in the opinion of the court in *Hazard* v. *Durant,* 19 Fed. Rep. 477. It was there characterized, and properly characterized, as an action by a receiver, a mere officer and servant of the court appointing him, and having no title to the fund by assignment or conveyance, or other lien or interest than that derived from his appointment. It may be well conceded that such an officer on such a showing of title cannot recover in a foreign jurisdiction.

If Booth, the receiver in *Booth* v. *Clark,* had, after his appointment as receiver, got possession of the Mexican claim prior to its coming to the hands of Clark's assignee in bankruptcy, and such had been made to appear in his action, the court would no doubt, in accordance with the principle of its rule laid down in *Biddle* v. *Wilkins,* 1 Pet. 686, have held in favor of Booth. Booth would then have shown an individual and personal right to recover.

The cases cited by the counsel for appellant, which follow *Booth* v. *Clark,* are like it in the material feature above pointed out. The receiver in all such cases relied on his order of appointment *merely* to recover. It cannot escape observation, that if this court sanctions the contention of appellant's counsel, that it will authorize the taking of property from the hands of a court having

ample jurisdiction, which had, through the agency of a receiver (its own instrument), gotten lawful possession of property, and whose possession was lawful, when this property was attached here.

The statements made in the note referred to in the prevailing opinion relate merely to a suit by a receiver in a foreign jurisdiction, where he had never reduced the property to possession, and relies *solely* on the order of appointment to recover, as a careful perusal of the note will make evident. There is no case cited in the note which holds that a receiver, after he has reduced the property of the litigant to possession, and it is taken from him, cannot sue for it in any jurisdiction where he can find it. The title vested in the appointed receiver when he has reduced the property to possession, and on this title he can recover. His right to recover rests on his right and title procured in the mode above pointed out, and is not allowed on any consideration of comity. Title vests, and in consequence a right to recover in the courts of every civilized country, as a matter, not of comity, but of right. No court has a right to take the property of one person and give it to another, or have it sold for the benefit of another. Considerations of comity only arise where the receiver sues in a foreign jurisdiction on the mere order of appointment. Considerations of comity allow such suit, where there is no legal policy which forbids it, does not affect the rights of creditors or other persons, citizens of the jurisdiction where the suit is brought. Such is *Hurd* v. *Elizabeth*, 41 N. J. L. 1, where the suit was allowed to be maintained on considerations of comity. The special property vested in the receiver gives him a title on which he can recover anywhere. A sheriff gets only a special property where he has levied an execution, and on such title he can sue and recover anywhere. If a sheriff of this state seizes horses under a writ of attachment or execution within its limits, and the horses

escape into the state of Nevada, and were taken possession of by a third person, we cannot see why he cannot recover in a suit in a Nevada court, even against an attaching creditor there.

The title of the receiver vested when he reduced this car to possession by the consent of the corporation. He sent it out of the state of Missouri, where he had it, for a lawful purpose. Why has a creditor a right to attach it? It was not the property of the corporation when it was attached, but of the receiver of the court, of which the receiver is the hand and instrument.

I cannot conceive how a creditor can attach the property of one person to pay a debt due him by another.

The statement in the complaint that the plaintiffs were appointed receivers by the court of Missouri shows the origin of plaintiffs' right; but it is further alleged that the plaintiffs took possession of the car, and held it in possession until such possession was interfered with by the defendant, as afterward stated in the complaint. The plaintiffs count specially on their own possession. We see nothing herein to prevent the plaintiffs from recovering on their individual rights. The averment as to their being receivers may be regarded as *descriptio personæ*, and may be rejected as surplusage in accordance with the rule laid down in *Lewis* v. *Adams*, 70 Cal. 411, 412; 59 Am. Rep. 423.

I find no error in the record, and think that the judgment and order should be affirmed.

McFARLAND, J., dissenting.—I dissent, and concur in most of the views expressed in the dissenting opinion of Mr. Justice Thornton.

Rehearing denied.