# JENKINS v. PURCELL.

DECREES AND JUDGMENTS; RECEIVERS; JURISDICTION; FOREIGN RECEIVERS; COMITY.

1. If parties are properly impleaded, and consent to a decree or judgment, it is conclusive upon them.
2. Ownership of the property involved in a litigation will not render the owner ineligible to appointment as receiver of the interest of another in the profits to be derived from the sale of such property,—especially where the interest of the owner is not in conflict with the interests of the creditors of such other person.
3. Where a foreign court, having jurisdiction of the parties and subject-matter of a cause, appoints a receiver therein, this court, in a suit here to which such receiver is a party, will not review the action of that court to determine whether a receiver should have been appointed, and, if so, whether the receiver appointed was a proper person to be selected.
4. A receiver may properly be appointed of an equitable assignable interest in personal property recognized as such by the legal owner.
5. The right of a foreign receiver who, upon his appointment, took personal property in his possession in the jurisdiction of his appointment, and brought it to this District, and sold it, is superior to the right of a domestic creditor of the owner, who attaches the proceeds of the sale in the hands of the purchaser from the receiver; and the courts of this jurisdiction will, upon the principle of comity, recognize and protect the right of the receiver under such circumstances. (Citing *Barley* v. *Gittings*, 15 App. D. C. 427.)

No. 1748. Submitted February 6, 1907. Decided March 5, 1907.

HEARING on an appeal by the plaintiff in an attachment suit from an order of the Supreme Court of the District of Columbia quashing the writ of attachment upon the petition of an intervener. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District of Columbia quashing an attachment. Appellant, James P. Jenkins, a resident of the District of Columbia, attached certain alleged credits of one Charles W. Jenkins, a resident of Loudoun county, Virginia, in the hands of Michael Hano, in the District of Columbia.

From the agreed statement of facts it appears that appellee, Nicholas S. Purcell, a resident of said Loudoun county, Virginia, "in his own right and as receiver," and with the consent of the court below, filed his petition in that court under oath, supported by affidavits and exhibits, and concluding with a prayer "for an order discharging the attachment and directing the property to be turned over to him." The petition in substance discloses that the said Charles W. Jenkins, in July, 1905, leased from the petitioner a farm situated in said Loudoun county, Virginia, under an agreement that the lessor and lessee at joint expense should "lay in cattle for grazing and fattening purposes, and when sold the net profits to be equally divided between them, and that the cost of the taking care of the partnership cattle should be entirely at the expense of the said Jenkins; that sixty-one head of cattle were purchased by the said Purcell at his sole cost and expense, and placed upon the said farm for grazing purposes; and that no part of the purchase price had been paid by the said Charles W. Jenkins or by anyone else for him;" that the said Jenkins subsequently executed a bill of sale, in which he attempted to transfer his personal property in Loudoun county, Virginia, "except his interest in the profits of the said sixty-one head of cattle," to his son Henry G. Jenkins; that there was filed for record in said Loudoun county "a chattel deed of trust from the said Henry Jenkins to secure one Henry Copperthite the sum of two thousand dollars ($2,000); that thereafter, on the 2d day of August, 1906, the said Charles W. Jenkins and Henry G. Jenkins duly executed a certain other chattel deed of trust to Cecil Connor as trustee of certain personal property, including all of the undivided

share in the profits of Charles W. Jenkins in the certain lot of sixty-one head of cattle upon the farm known as 'Presque Isle,' for the purpose of securing the payment of various notes aggregating the sum of six hunderd seventy-seven dollars ($677), and to secure one S. H. Ball from all liability by reason of his indorsement of a certain note in the sum of one hundred ($100) for the said Charles W. Jenkins; that the said bill of sale and deeds of trust were duly recorded in the clerk's Office of Loudoun county, Virginia; that thereafter the Loudoun National Bank of Leesburg, Virginia, being the holder and owner of the notes referred to in the deed of trust to Cecil Connor, filed a bill in chancery in the circuit court of said Loudoun county, Virginia, the same being a court of record, for the purpose of setting aside the bill of sale made by the said Charles W. Jenkins to Henry Jenkins, on the ground that the same was fraudulent, and also to set aside the chattel trust made by the said Henry Jenkins to secure the said Copperthite, on the ground that the same was not a bona fide transaction, but made for the purpose of covering up said property and to hinder and delay the creditors of the said Charles W. Jenkins in the collection of their debts, and also for the purpose of subjecting the said property of the said Charles W. Jenkins to the payment of his debts; that all the parties interested in said property referred to in the bill of sale and in the deeds of trust, as well as the petitioner, Purcell and the defendant Charles W. Jenkins, were made parties defendant to said bill; that thereafter, on the 18th day of October, 1906, the said circuit court of Loudoun county, Virginia, with the consent of all parties to said proceeding, took charge of all the property owned by the said Charles W. Jenkins, and which he had attempted to transfer to his son Henry G. Jenkins, *and also the sixty-one head of cattle referred to in the mortgage to said Connor,"* and passed a decree which is set forth in the petition. The decree recites that all the parties appeared by counsel; that said Charles W. Jenkins and Henry G. Jenkins each filed an answer to the bill; that the cause, by consent of parties, was docketed and the same heard upon the bill and exhibits filed therewith, and that upon

consideration whereof and by consent of parties the court appointed the sheriff of said Loudoun county, Virginia, receiver for all the personal property in the bill "excepting the cattle, two horses, and the harness therefor, and one wagon," and by like consent directed said N. S. Purcell to sell the cattle mentioned in the bill, and report his sale to the court, and "especially the share therein of Charles W. Jenkins." The petition further states "that, in pursuance of the authority vested in him the said Purcell, by said decree, and in his own right, he delivered said sixty-one (head) of cattle to one Michael Hano in the city of Washington, District of Columbia, *to whom he had agreed prior to that time to sell the same;*" and that the said cattle were delivered to the said Hano on the morning of November 5, 1906, and that after weighing said cattle "there was found to be due Purcell as receiver and in his own right, after deducting expenses, the sum of three thousand one hundred and sixty-nine dollars and sixty-two cents ($3,169.62); and that this sum was attached by the plaintiff in this cause under the writ of attachment above referred to;    *    *    * and that the proceeds of said cattle was the property of said Purcell in his own right and as receiver appointed under said decree; that the said cattle were, at the time of filing of the bill in chancery, and at the time of the filing of the decree, and at the time of the execution of the deed of trust to said Cecil Connor, located on said Purcell's farm known as 'Presque Isle,' in Loudoun county, Virginia, and remained on said farm until about November 4, 1906, when they were started for Washington, to be delivered to the said Michael Hano."

*Mr. Charles F. Diggs* and *Mr. M. F. Mangan* for the appellant.

*Mr. Walter V. R. Berry, Mr. Benjamin S. Minor,* and *Mr. Hugh B. Rowland* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Appellant's first contention is that "the court erred in holding that N. S. Purcell is the receiver of the circuit court of Loudoun county, Virginia." We do not think this contention is well founded. It is alleged in the petition, and not denied, that at the time this order was made by the Loudoun county circuit court that court had jurisdiction of the parties and the subject-matter. That being so, it could make no difference that a consent decree was entered; for, as was tersely observed in *Langdon* v. *Vermont & C. R. Co.* 54 Vt. 606, "if parties are properly impleaded, and consent to a decree or judgment, that decree or judgment is as conclusive upon the parties as if the litigants had wrangled over it for a lifetime." The fact that Purcell was the owner of the cattle did not render him ineligible to appointment as receiver of Jenkin's interest in the profits to be derived from the sale of the cattle, for Purcell's interests were not in conflict with the interests of Jenkins's creditors. Moreover, the wisdom of appointing a receiver and the selection of a proper person as receiver are both largely discretionary with the court having jurisdiction of the parties and the subject-matter. In *Shannon* v. *Hanks,* 88 Va. 338, 13 S. E. 437, plaintiff's attorney was appointed as receiver, and objection was made in the appellate court. The court said: "The general rule, undoubtedly, is that a receiver ought to be an indifferent person between the parties. But the selection of a proper person is very much a matter within the discretion of the court, and hence will very rarely be interfered with by an appellate court." See also *Robinson* v. *Dickey,* 143 Ind. 214, 42 N. E. 638; and *Taylor* v. *Life Asso. of America,* 3 Fed. 467. The Virginia court, having had jurisdiction of the parties and the subject-matter, and having in the exercise of its discretion designated Purcell as its receiver for the purpose of selling these cattle, his appointment will not be questioned here.

It is next objected that the funds attached by appellant were not in the jurisdiction of the Virginia court at the time of Purcell's appointment as receiver. The ground of this objection

is "that the thing in which Jenkins had an interest did not exist until Hano concluded his contract for the purchase of the cattle, and therefore, this being done within the District of Columbia, Jenkins's property had its origin in this jurisdiction, and was never for a moment within the jurisdiction of the Virginia tribunal." This proposition is more artificial than sound. To be sure, the title to the cattle was in Purcell, but Jenkins, under the terms of his agreement with Purcell, had an equitable assignable interest in said cattle, which the court could and did lay hold of for the benefit of creditors. Purcell recognized this interest when, without objection, he permitted the court to take charge of said cattle.

This brings us to the real question in the case, which is directed to the action of the court in permitting appellee to intervene in this suit. The Supreme Court of the United States has said that a receiver has no legal status outside the jurisdiction of his appointment in suits, to recover property never within the jurisdiction and control of the court appointing him. *Booth* v. *Clark,* 17 How. 322, 15 L. ed. 164; *Quincy, M. & P. R. Co.* v. *Humphreys,* 145 U. S. 82, 36 L. ed. 632, 12 Sup. Ct. Rep. 787; *Hale* v. *Allinson,* 188 U. S. 56, 47 L. ed. 380, 23 Sup. Ct. Rep. 244; *Great Western Min. & Mfg. Co.* v. *Harris,* 198 U. S. 561, 49 L. ed. 1163, 25 Sup. Ct. Rep. 770. Mr. Justice Wayne, in *Booth* v. *Clark,* said a receiver "has no extraterritorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek."

"The ground of this conclusion," said Mr. Justice Day, in *Great Western Min. & Mfg. Co.* v. *Harris,* "is that every jurisdiction in which it is sought by means of a receiver to subject property to the control of the court has the right and power to determine for itself who the receiver shall be, and to make such

distribution of the funds realized within its own jurisdiction as will protect the rights of local parties interested therein, and not permit a foreign court to prejudice the rights of local creditors by removing assets from the local jurisdiction without an order of the court, or its approval as to the officer who shall act in the holding and distribution of the property recovered."

The facts in this case, however, are quite different from the facts in the cases in which the Supreme Court announced the foregoing rule. In this case the property was within the jurisdiction and control of the court appointing the receiver at the time of the appointment, and the receiver therefore took possession of the property as the representative of the court. He brought the property into this jurisdiction for a lawful purpose, and his possessory title to the property was sought to be disturbed by a local creditor. The court below, in the exercise of its discretion, permitted the receiver to intervene to protect his rights. This, we think, the court was justified in doing in the circumstances and under the authority of *Barley* v. *Gittings,* 15 App. D. C. 427. In that case, which involved the question whether a Virginia receiver might intervene in a suit in this jurisdiction, in a case where in so doing the rights of local creditors would not be impaired, the court said: "There seems to be no controlling reason why the courts of this jurisdiction, exercising a sound discretion in the application of the rules of interstate comity, should not, upon application, permit interventions and suits by receivers appointed by State courts, where important interests of creditors and others would be subserved, and when, to do so, would not contravene the policy of local laws or be detrimental to the interests of domestic creditors." The court observed that nothing in *Booth* v. *Clark* conflicted with such a conclusion.

The doctrine announced in *Barley* v. *Gittings* is supported by numerous authorities. In *Cagill* v. *Wooldridge,* 8 Baxt. 580, 35 Am. Rep. 716, the court, after stating the general rule, said: "But where the court of a sister state, having jurisdiction of the parties and subject-matter, and having the property within its

actual control, appoints a receiver to take possession of and sell the property, and this order is executed by the property being actually taken into possession by the receiver, we think, beyond doubt, this would give to the receiver against the parties to the litigation and those claiming through them a special property and right of possession that would enable him to maintain an action of replevin and that this right would not be lost by sending the property to this State for sale. To this extent we would respect the orders and judgments of the courts of sister States. The receiver can, in such case, maintain the action in his individual capacity."

In *Pond* v. *Cooke*, 45 Conn. 126, 29 Am. Rep. 668, Cooke was appointed receiver of an insolvent company in the State of New Jersey, where the company and its assets were located. The receiver took possession of the property and assets of the company, and, to carry out a contract that had been entered into for the construction of a bridge in Connecticut, purchased iron and had it prepared and shipped to Connecticut for use in the construction of the bridge. The iron was there attached by a creditor of the insolvent company, and the question before the court was whether such attachment was good as against the receiver. The court said: "Thus it appears that the property was in the possession of the defendant as receiver when it came into this State. He was invested with it, and was legitimately performing the duties of his appointment in completing the contract by its use when it was attached by the plaintiff. In these circumstances, comity among the States requires that the case should be regarded by our courts precisely as it would have been by the courts of New Jersey if the controversy had arisen there. * * * The law of another State will not devest the trustee, assignee, or receiver of his right to the property, should he take it into such State in the performance of his duty. The courts of such State will inquire whether he has such right to the property when it comes into the State as between himself and their own citizens; but when the fact that he has such right is ascertained, they will not regard it as important by what mode the right was acquired."

The case of *Chicago, M. & St. P. R. Co.* v. *Keokuk Northern Line Packet Co.* 108 Ill. 317, 48 Am. Rep. 557, is to the same effect. In that case a receiver was appointed by the circuit court of the city of St. Louis, Missouri, of the packet company, which was insolvent. The receiver took possession of a barge which was then within the jurisdiction of that court. He subsequently chartered the barge for a trip up the Mississippi river, and return, and while on this trip and within the jurisdiction of the State of Illinois the barge was attached. The court, after stating that a foreign receiver would not be permitted to remove from the State assets of a debtor that had never been in the jurisdiction of the court appointing the receiver, said: "But the facts that the property at the time of the appointment of the receiver was within the jurisdiction of the court making the appointment, and was there taken into the actual possession of the receiver, and continued in his possession until it was attached, take the case, as we conceive, out of the range of the foregoing principles. * * * By taking the barge into his possession within the jurisdiction of the court that appointed him, a special property in the barge became vested in the receiver; and it is the established rule that, where a legal title to personal property has once passed and become vested in accordance with the law of the State where it is situated, the validity of such title will be recognized everywhere. *Cammell* v. *Sewell,* 5 Hurlst. & N. 728; *Clark* v. *Connecticut Peat Co.* 35 Conn. 303; *Taylor* v. *Boardman,* 25 Vt. 581; *Crapo* v. *Kelly,* 16 Wall. 610, 21 L. ed. 430; *Waters* v. *Barton,* 1 Coldw. 450. Under this rule we hold that, where a receiver has once obtained rightful possession of personal property situated within the jurisdiction of his appointment, which he was appointed to take charge of, he will not be deprived of its possession, though he takes it, in the performance of his duty, into a foreign jurisdiction; that while there it cannot be taken from his possession by creditors of the insolvent debtor who reside in that jurisdiction."

In *Robertson* v. *Staed,* 135 Mo. 135, 33 L.R.A. 203, 58 Am. St. Rep. 569, 36 S. W. 610, it was ruled that, "after a receiver

has obtained possession of the property of the debtor within the jurisdiction of the court appointing him, such possession will be protected, into whatever jurisdiction the property may thereafter be taken by the receiver." The court said: "We know of no principle upon which rights of domestic creditors can be created by reason of the property in the lawful possession of the receiver being brought within their jurisdiction. Such a rule would greatly embarrass the receiver in the discharge of his duties, and would, in many cases, affect injuriously the rights of creditors."

See *Boulware* v. *Davis,* 90 Ala. 207, 9 L.R.A. 601, 8 So. 84; *McAlpin* v. *Jones,* 10 La. Ann. 552; *Hurd* v. *Elizabeth,* 41 N. J. L. 1; *Merchants' Nat. Bank* v. *Pennsylvania Steel Co.* 57 N. J. L. 336, 30 Atl. 545.

The only case cited by appellant that is really in conflict with the doctrine announced in these cases is the case of *Humphreys* v. *Hopkins,* in 81 Cal. 551, 6 L.R.A. 792, 15 Am. St. Rep. 76, 22 Pac. 892, and in that case there was a well-considered dissenting opinion by two members of the court.

We conclude, therefore, that when Purcell was appointed receiver and took possession of these cattle he acquired a possessory title in them, which followed him into this jurisdiction, and which we, as a matter of comity and good conscience, will recognize and protect. He did not come into this jurisdiction, and seek to remove property located here to a foreign jurisdiction. He did not come into this jurisdiction to assert title to property located here, in virtue of a foreign appointment that had no extra-territorial effect, and that could not, therefore, vest property in him that was outside the jurisdiction of his appointment. On the contrary, as previously stated, he came here vested with the legal custody and control of property that concededly passed to him within the jurisdiction of his appointment. Under his appointment he was to sell these cattle and report to the court the proceeds of the sale,—"especially the share therein of Charles W. Jenkins." In pursuance of this direction he negotiated a sale to a resident of Washington, and then brought the cattle within this jurisdiction. It is beyond question that, had

the sale been consummated in Virginia, within the jurisdiction of the court directing it, it would have been a valid and binding sale, and the proceeds thereof would have been reported to the court, and would have been subject to its jurisdiction and control. Surely we ought not to resort to highly technical and artificial expedients, in utter disregard of the equities of the case, for the sole purpose of preserving to a local creditor that which a mere chance has placed within his grasp. While courts ought to protect and preserve the rights of those within their own jurisdiction, they ought not to do so in disregard of the rights of those of other jurisdictions.

The order will be affirmed, with costs, and it is so ordered.

*Affirmed.*