THE MERCHANTS' NATIONAL BANK OF BOSTON v. THE PENNSYLVANIA STEEL COMPANY.

1. The Pennsylvania Steel Company, a Pennsylvania corporation, became insolvent, and receivers were appointed by a court of that state. They took into their possession all the assets of every description, belonging to that corporation. They subsequently made a contract with a New Jersey corporation to manufacture for and deliver to it certain articles, and in pursuance thereof, they did furnish and deliver, prior

to the attachment herein, a portion of said articles. A foreign corporation, the Merchants' National Bank of Boston, residing in Massachusetts, thereupon and after the passage of the supplement to the Attachment act, May 9th, 1894 (*Pamph. L., p.* 274), sued out a writ of attachment in this state against the Pennsylvania insolvent corporation, and attached thereunder the moneys due to the receivers under said contract, and also a part of the rails that had been theretofore delivered by said receivers to the New Jersey corporation, under said contract. The Boston bank knew that the receivers had entered upon the discharge of their duties, and it had collected from said receivers interest on notes of the insolvent company, which it held at the date of the appointment of said receivers or on renewals thereof made at its request. *Held,* that there was no property or assets in existence in this state which the Boston bank could attach as the property of the insolvent Pennsylvania corporation ; all its assets having passed into the hands of the receivers, that the money due under the contract made by the receivers with the New Jersey corporation belonged to said receivers, in trust, for the benefit of the creditors and stockholders of the Pennsylvania corporation.

2. That the attachment should be set aside and vacated, as there was no property of the defendant corporation to attach, when the same was issued, and because the attachment interfered with the proper administration of the trust fund by the receivers, under the orders of the Pennsylvania court.

3. That as there is no statute in this state to prevent such action, and no rights of domestic creditors involved, that comity calls upon this court to protect the rights of the receivers acting under the direction of and as officers of the Pennsylvania court, by vacating this attachment against the insolvent Pennsylvania corporation.

On rule to show cause why the attachment against the defendant should not, on application of the receivers of the defendants, be set aside and vacated.

Argued at June Term, 1894, before Justices DIXON, REED and ABBETT.

For the rule and the receivers of defendant, *Vredenburgh & Garretson.*

Against the rule and for the Boston bank, *Cortlandt & R. Wayne Parker.*

The opinion of the court was delivered by

ABBETT, J.   The Pennsylvania Steel Company is a corporation of the State of Pennsylvania.   It became insolvent and was so declared, April 20th, 1893, in a suit in a Court of Common Pleas, No. 2, in the county of Philadelphia, wherein Alfred Earnshall and E. Robert Cox were plaintiffs, and the Pennsylvania Steel Company, defendants.   That court appointed Luther S. Bent and the Girard Life Insurance and Annuity Company of Philadelphia, receivers of all its property, equitable interests, things in action, effects, moneys, receipts, earnings, rights, privileges, franchises and immunities, wheresoever the same or any part thereof might be situated, with all the powers and rights of receivers in like cases, and particularly with the powers, rights and duties as expressly set forth in the order of appointment.

The receivers were directed forthwith to enter upon and take possession of all and singular the said property, &c., and to have and hold, use, operate, exercise and enjoy the same, and operate and manage the mills and manufactories of the defendant corporation with their appurtenances until further order of the court.   The said corporation, its officers, directors and agents, or whomsoever might have possession thereof, were directed to deliver over to said receivers all and every part of the said property, real and personal, interests, effects, moneys, receipts, earnings and all books, vouchers and other papers touching the same or any part thereof; and the receivers were also authorized to pay for such repairs, supplies, labor and services as should, in their judgment, be necessary and proper to conserve and operate the mills, manufactories and other property of the corporation defendant; they were author- · ized to pay the indebtedness of the said corporation theretofore incurred for wages and salaries, and further authorized to pay out of the income of the said property and out of the assets of said corporation defendant, interest thereafter to become due and payable upon the first mortgage bonds.   They were also authorized, until the further order of the court, to enter into contracts for the product of said mills, and manufactories

of the defendant corporation; to manufacture such products, make sales thereof, make necessary purchases and to continue the operation until otherwise directed to the contrary. All creditors of the company, attorneys and agents and all other persons whomsoever claiming to be such, were enjoined and restrained from interfering with the properties and affairs of the said corporation by suit or suits, attachment or attachments, execution or executions, or other process or processes in law or equity without the order and direction of said court.

In obedience to this decree all the assets of every description of said corporation were delivered to said receivers, the assets not capable of manual delivery being assigned to them by said insolvent corporation in pursuance of said decree. The receivers under said decree operated the mills, purchased material necessary therefor, and engaged employes and paid them to keep the plant a live and going concern. The receivers, on June 19th, 1893, entered into an agreement with the Consolidated Traction Company of New Jersey to manufacture and deliver to it some seventy-five miles of rails of a peculiar kind, manufactured at the factory of this insolvent company, and also some other articles in connection therewith necessary for the traction company's railroad. The said traction company agreed to pay for the rails and other articles as set out in the said agreement. The delivery under this contract commenced June 27th, 1893, and continued from time to time until the attachment issued in the above suit.

On May 19th, 1894, the Merchants' National Bank of Boston caused to be issued out of the Supreme Court of this state an attachment against the Pennsylvania Steel Company, under which writ the sheriff of Hudson county attached in the hands of the traction company all moneys due by it to the receivers of the Pennsylvania Steel Company for said steel rails and articles above mentioned, claiming the same as a debt due from the traction company to the steel company, and also all the company's interest in about three thousand rails which the receivers had delivered to the traction company, under their agreement of June 19th, 1893. The prop-

erty delivered to the traction company by the receivers had
not been delivered under any agreement that had been entered
into between the steel company and the traction company, but
was property manufactured or purchased by the receivers and
delivered by them under said contract made with the traction
company by the receivers after their appointment, and after
they had taken possession of all the assets of the insolvent
corporation.

The property delivered was nearly all created by the work
done by the receivers under the order of the Pennsylvania
court.    The only other articles delivered were goods bought
by the receivers and delivered under their contract to the
traction company.    In making these purchases and in using
the funds in their hands therefor, and in manufacturing the
rails to be delivered, the receivers were acting as trustees for
the creditors and the stockholders of said insolvent company,
under the direction and order of the Pennsylvania court.    All
of the seventy-five miles of rails delivered that were to be de-
livered under the contract, and which had been created and
brought into life, had been manufactured after the insolvency
of the company by the receivers themselves under the order
of the court.    The object of the Boston bank undoubtedly
was to take advantage of the supplement to the Attachment
act of May 9th, 1894 (*Pamph. L., p.* 274), under which they
expected by their attachment of May 16th to secure a pref-
erence over other creditors of said insolvent Pennsylvania
company.

The first question in this case is to determine the effect of
the action of the Court of Common Pleas of Philadelphia in
adjudging the Pennsylvania Steel Company to be insolvent
and appointing receivers thereof, who took immediate posses-
sion of all the assets of the company, and as such receivers,
under the order of the court, carried on business in the manu-
facture of rails, &c., and entered into contracts for the deliv-
ery thereof.    All the property that was capable of manual
delivery was so delivered to the receivers by the officers of
the insolvent corporation under the order of the court; all

the other assets of the company incapable of manual delivery were assigned and transferred by such officers to the receivers. Such a delivery and transfer to the receivers gave them title in Pennsylvania to all the property and rights of the corporation of every description. This effect has been given to the appointment of a receiver of a foreign incorporation in this state. *Minchin* v. *Second National Bank,* 9 *Stew. Eq.* 436. The United States Circuit Court for the District of New Jersey has also held that "upon a decree of insolvency against and the appointment of a receiver for a corporation, the receiver becomes immediately possessed of all the assets of the corporation, holding them in trust for its creditors and stockholders," and also that such receiver "stands before the court invested with all the rights and equities of the creditors of the insolvent corporation;" and further, that "the possession of the receiver is the possession of the court, and the court administers that estate itself for the benefit of those whom it shall ultimately adjudge to be entitled to it." *Werner* v. *Murphy, Receiver, et al.,* 17 *N. J. L. J.* 297.

The opinion of the Chief Justice in *Wilkinson* v. *Rutherford,* 20 *Vroom* 244, referring to the usual rules of jurisprudence governing this subject, says: "I cannot agree to the doctrine that a receiver is a mere custodian of the property of the person whom, in certain respects, he is made to supplant; for it would seem that he is an assignee of the assets within the scope of his office. There seems to be no reason why his power should not be held to be coextensive with his functions, and it is clear that he cannot conveniently perform those functions unless upon the theory that some interest in the property, akin to that of an assignee, passes to him."

If the traction company had been a Pennsylvania corporation, residing there, the receivers could have sued in their own names for the moneys due them on the traction company contract. *Singerly* v. *Fox,* 75 *Pa. St.* 112.

The Pennsylvania receivers being in possession of the plant and all the other assets of the insolvent steel company, a Pennsylvania corporation, ran the business under the orders

342    NEW JERSEY SUPREME COURT.

Merchants' Nat. Bank v. Penna. Steel Co.    57 N. J. L.

of the Court of Common Pleas of Philadelphia, and with permission thereof, entered into a contract with the New Jersey Traction Company to manufacture for it some seventy-five miles of rails and deliver them, and some other articles bought by or manufactured by them, for a stipulated compensation, to be paid to the receivers by the traction company. The receivers had delivered a portion of those rails and other property, and had been partially paid therefor, when the plaintiff, a foreign corporation, resident in Massachusetts, and one of the general creditors of the Pennsylvania insolvent corporation, came into this state and attached and took, according to the return of the sheriff, under the writ of attachment, "a certain debt owing to the said The Pennsylvania Steel Company from the Consolidated Traction Company for the sum of five hundred thousand dollars, being the price of steel rails purchased by the said The Pennsylvania Steel Company, and furnished and delivered to the said Consolidated Traction Company, or any interest of said company in any contract therefor, valued at five hundred thousand dollars," and also attaching "all the right, title and interest of the Pennsylvania Steel Company in three thousand steel rails, manufactured by the Pennsylvania Steel Company, and stamped with their initials, and furnished to and now in the possession of said Consolidated Traction Company, whether laid in its roads or intended to be, and valued at one hundred and fifty thousand dollars."

The Boston bank, when it caused this writ to be issued, knew that the Pennsylvania receivers had been appointed and were acting; in fact, they had been paid by said receivers the interest on the renewal notes held by said bank. The notes of the insolvent company held by said Boston bank had been renewed from time to time at said bank's request, and it was not until the legislature of this state, by the act of May 9th, 1894, changed the policy of the state in reference to the equal division of the proceeds received under an attachment, so as to enable the bank, if it could sustain this writ, to have a preference over all other creditors, that the bank refused to have

any further renewals of the notes held by it, and at once sought to attach the alleged assets of the insolvent corporation in New Jersey. The result of this writ was to tie up the assets of the insolvent company, which belonged to the receivers, and to interfere with the administration of the trust estate by the Pennsylvania court, and virtually destroy the contract made by the receivers, and thus injure all the other creditors, and the bank now seeks by this writ to get possession of the property created by or purchased by the receivers, with the trust moneys held by the receivers for the benefit of all its creditors, of whom the Boston bank is one.

This is an attempt by a foreign creditor to come into our jurisdiction and use our process to interfere with the due administration of the trust estate by receivers acting under the laws of Pennsylvania, and if successful, the Boston bank, under the act of May 9th, 1894, expects not only to get an advantage over all other foreign creditors, but also to have a preference over every New Jersey creditor of this insolvent Pennsylvania corporation. The comity which this state owes to the State of Pennsylvania, and to its courts and to receivers acting under orders of one of its courts, should prevent such a result, unless there is some statute or policy in our state which requires us to give to this foreign creditor the advantage it seeks. I know of none.

There is no state policy in New Jersey which will give to a foreign creditor in a case where no right of its own citizens is involved or impaired, assets which belong to receivers of a foreign corporation, and especially where such assets belong to the receivers under a contract made by such receivers after the insolvency of said foreign corporation has been judicially declared, and they have entered into possession under their appointment. In the absence of any statute or policy requiring it to be otherwise done, the general rule of comity will prevail. The true rule of comity, in such a case as is here presented, is for our courts to assist foreign receivers appointed by and acting under the orders of a court of a sister state.

344    NEW JERSEY SUPREME COURT.

Merchants' Nat. Bank v. Penna. Steel Co.    *57 N. J. L.*

The Chief Justice, in the case of *Bently* v. *Whittemore*, 4 *C. E. Gr.* 469, says: "But upon what principle is it that the citizens of another state can ask us to refuse to recognize the validity of an assignment made in the State of New York, and in conformity with her laws? Upon what plea, consistent with comity under such circumstances, are the authorities of this government to repudiate a transaction valid by the laws of a sister state? If the question touched one of our own citizens, we could vindicate our objection to such transaction on the ground of our statute, passed legitimately for the special regulation of the affairs of such citizens. But if such rejection relates to the citizen of another state, how is such a line of conduct to be justified? We might indeed urge, as a sort of excuse, that the law of New York, regulating assignments, was not similar to the law of this state, and that we preferred the regulations of our own law, and therefore would not permit the law of New York to prevail in our state with respect to the citizens of Rhode Island or New Hampshire. But I cannot think we have a right to endeavor to arbitrate, in such a concern between the State of New York and the citizens of these other states."

Under the reasoning of that case, if an assignment in New York which gave preference to creditors was not permitted to be attacked in this state by a resident of Rhode Island or New Hampshire, it would seem to follow that the transfer of the property by the insolvent Pennsylvania corporation to receivers in that state, under a decree of its court and valid there, should also be unassailable in the courts of this state by a foreign corporation.

The receivers held title to the debt of the traction company due them, and also to the rails attached, except so far as the rails had become the property of the traction company by the sale thereof to it, by said receivers. The receivers were assignees, by legal intendment, of the property and choses in action committed to them. *Wilkinson* v. *Rutherford*, 20 *Vroom* 241. There was no property or assets of any kind of the Pennsylvania Steel Company in New Jersey subject to

this attachment at the time the writ was issued. They all belonged to the receivers as trustees who were under the control of the Pennsylvania court, and as a matter of comity, we should protect these Pennsylvania receivers from foreign creditors, who seek in this manner to take assets belonging to the receivers, and to use our process in order to obtain a preference for themselves over all other creditors.

If a New Jersey receiver had sold to a citizen of Pennsylvania goods manufactured in this state by such receiver, who had used the trust funds therefor, under a decree of our courts, and had gone into its tribunals to oppose the use of Pennsylvania process which sought to deprive our receiver of this trust fund, we would feel that comity called upon the courts of that commonwealth to assist our courts in the proper administration of this trust fund, by setting aside any process that interfered with the due administration of this trust fund by our courts. If we would deem such action proper there, we should give like relief here under similar circumstances.

No property has been attached, except property or rights belonging to the receivers, and the taking of that property is an abuse of the process of the court, as the receivers, and they alone, are entitled to the possession thereof.

Let the writ of attachment be quashed.