PROVOSTY, J. The prayer of this suit is that the record of a certain act of sale from the plaintiffs in favor of defendant's author in title to a certain tract of land be ordered to be canceled and that the plaintiffs be decreed the owners of the land. The ground of the suit is that the plaintiffs never signed or executed the deed in question; that it is a forgery. The contrary is very conclusively proved in the record. The plaintiffs and appellants have made no appearance in this court.

Judgment affirmed.

---

(55 South. 832.)

No. 18,320.

DE MATTOS v. CAMP & HINTON CO. (ILLINOIS CENT. R. R. et al. Garnishees).

(May 8, 1911. Rehearing Denied June 17, 1911.)

*(Syllabus by the Court.)*

1. RECEIVERS (§ 209*)—PROPERTY SUBJECT—OWNERSHIP.

Camp & Hinton having assigned their claims against the railroads to a duly qualified receiver, and the Marine Oil Company, Limited, having agreed to this assignment, and having recognized the jurisdictioin of the Mississippi court over the debt assigned and now sought to be attached here, the latter cannot now be heard to deny the possession of the debt by the receiver, and so the plaintiff, who is the assignee of the Marine Oil Company, Limited, is also estopped from denying the receiver's possession.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 209.*]

2. RECEIVERS (§ 209*)—EQUITABLE ESTOPPEL—ACCEPTANCE OF BENEFITS.

The possession by the receiver of the debt sought to be attached here was for the benefit of the assignor of plaintiff, as well as for the other creditors, and equity demands that it should not be permitted to deny a possession which was had with its consent, and by such denial change the situs which had been created for its benefit.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 209.*]

3. RECEIVERS (§ 209*)—FOREIGN RECEIVER—PROCEEDINGS TO ENFORCE CLAIM—JURISDICTION.

The assignor of plaintiff having been a party to the proceedings by which the receiver took charge of the assets under the orders of the Mississippi, it thereby recognized the jurisdiction of the Mississippi court over the debt now sought to be attached, and the assignor of plaintiff would not have been in a position to invoke the rule that local creditors are entitled to a preference over foreign creditors in regard to funds in the jurisdiction of this court.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 209.*]

4. RECEIVERS (§ 207*)—VALIDITY OF PROCEEDINGS—CONSENT OF CREDITORS.

While the law of Mississippi would not have been sufficient in an involuntary assignment to transfer the property in another state to the assignee, the consent of the creditors does have the effect of transferring to the receiver the possession of property situated in another state.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 207.*]

5. RECEIVERS (§ 209*)—POSSESSION OF PROPERTY—EFFECT.

By the consent of the assignor of the plaintiff, the receiver had been in possession of the claims against the railroad companies, and this possession was a continuing right which could not be divested, and is sufficient to preclude the plaintiff from attaching in this state any claim against the railroad companies.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 209.*]

6. RECEIVERS (§ 209*)—FOREIGN RECEIVER.

To hold that the plaintiff could enjoy the benefit of the agreement by which the receiver was enabled to recover funds for the benefit of all the creditors, and then allow him to repudiate it so as to enjoy an advantage over other creditors would be inequitable.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 209.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Max Teixeira de Mattos against the Camp & Hinton Company, defendant, and the Illinois Central Railroad and others, garnishees. From a judgment for defendants and garnishees, plaintiff appeals. Affirmed.

Thomas E. Furlow and Lewis R. Graham, for appellant. Meyer S. Dreifus and T. M. & J. D. Miller, for appellees.

BREAUX, C. J. Plaintiff, domiciled in Louisiana, sued the defendant, a foreign corporation, for a large amount. He at the same time obtained an attachment.

The court appointed a curator ad hoc to represent the corporation, an absentee, in the attachment proceedings.

The railway companies, according to plaintiff, debtors to defendants, were made parties garnishees, and certain alleged debts of the railway companies, garnishees, to defendant, plaintiff urged, were seised and garnished.

The plaintiff propounded interrogatories to the garnishees.

They were answered a few days after plaintiff had filed his suit.

These interrogatories were traversed by the pleadings, but the issue thus raised never was tried.

[1] Counsel for the garnishees and Camp & Hinton Company submit in defense that a receiver was appointed in the state of Mississippi in November, 1907, by the chancery court of Lamar county, Miss., to administer the affairs of the firm of Camp & Hinton Company, who made a surrender.

This appointment of a receiver was made in accordance with the bill in chancery of J. P. Jones, a large creditor of the firm of Camp & Hinton Company.

The Hibernia Bank & Trust Company and C. M. Robinson were appointed receivers with full power to go into possession of the property and administer its affairs.

This the receivers did.

The property was assigned by the debtor in the bankruptcy proceedings.

In May, 1909, all parties—receivers and the committee—agreed to obtain from the chanceller of the county court of Mississippi authority to compromise with the railroad companies, the Illinois Central and others, by accepting 67 cents on the dollar.

This rate, we are informed, was acceptable to nearly all of the creditors. Only a few declined to accept.

These few did not include the Marine Oil Company, Limited. It joined the majority.

In the April preceding defendant Camp & Hinton Company, duly authorized by the chancellor, assigned to the Hibernia Bank & Trust Company and C. M. Robinson all their claims for over charges by said railroad. They were assigned for the purpose of settling and paying the debts of the firm.

To the end of properly administering the affairs of Camp & Hinton Company, which were in the hands of the receivers, on the application of these receivers, the court authorized them in the insolvency proceedings to borrow a large amount—some $148,500—on receivers' certificates, secured in accordance with the order of court, by priority, upon the assets of Camp & Hinton Company.

There were claims for labor also amounting to the sum of $17,000.

These also were taken into account and certificates issued.

The Marine Oil Company proved up its claim in the bankruptcy proceedings, and gave thereby full sanction to the county court's administration.

The property surrendered by Camp & Hinton Company was sold at public auction to a committee of creditors, one of whom was the president of the Marine Oil Company, original holder of the claims assigned to De Mattos by the last-named company.

The committee, that is, the adjudicatees before referred to—are still in charge and have the property bought for account of creditors. It removes timber and makes payment of debts in accordance with the agreement of these creditors, including the creditor, the Marine Oil Company, the transferror to plaintiff, De Mattos.

The issues are before us, by exception, filed by defendant on a number of grounds, among them that the garnishees did not take any property by the garnishment process, that the court had no jurisdiction because plaintiff proceeded by attachment, and there was no amount to which plaintiff was entitled.

The exception was filed after the interrogatories propounded by plaintiff to the

railroad companies had been answered by the latter, as before stated.

As a result of the filing of this exception, the motion to traverse was never tried.

Whatever amount had been collected by the receivers was for the account of the receivers, and not for the plaintiff, attaching creditor.

The defense is further, by exception, that, while it is true that defendant Camp & Hinton Company prior to November, 1907, had claims against the railroads sued as garnishees growing out of over charges of these railroads on lumber shipped from April, 1903, to July, 1907, as decided by the courts of inferior jurisdiction, and lastly by the Supreme Court of the United States, for which suit had been brought originally in a court of competent jurisdiction, these claims, though allowed by these courts, had not been collected, and one of the purposes of the receivership was to collect all the amounts due and realize all the cash possible and pay the debts.

The exception recites that the assets unsold have remained in the hands of the receivers, and are administered by them in accordance with the direction of the Mississippi court; that, in accordance with the agreement and the orders of that court, the receivers are to take charge of all amounts, including those claimed by plaintiff in the garnishment process.

Defendants, invoking all the different steps taken in the matter, with the consent of parties, alleged in their exception that plaintiff is not entitled to the amount, and cannot ignore the court of original jurisdiction in proceedings in which all concerned at the time were parties.

The funds being held by the court in Mississippi, it is contended by the defendants that the garnishees are now without right to take them from that court, as they are held to settle with all the creditors on simi-lar terms in accordance with the agreement among all the parties and in accordance with the requirement of law.

The averments in the exception are substantially correct. There is no difference between the pleadings and the agreed statement of facts before us.

It is in evidence that the chancery court of Mississippi has full jurisdiction to appoint receivers and to carry on proceedings such as those that were conducted in the present case.

The court heard the testimony at the trial of this exception and rendered judgment sustaining it, and dismissing the suit.

Plaintiff, assignee of the Marine Oil Company, seeks to exercise the right that his debtors, Camp & Hinton Company, had against the railroad companies.

Plaintiff's recourse is limited to the amount due by these railroad companies, and plaintiff's right is not greater than when Camp & Hinton Company were the creditors of these railroads prior to their surrender in bankruptcy.

This claim of Camp & Hinton Company had entirely passed out of their hands, and had been surrendered in bankruptcy with the full knowledge of the Marine Oil Company, its creditor.

If the assignor, the said Marine Oil Company, placed any condition or made any agreement with the receivers in regard to its claim against Camp & Hinton Company before it was transferred to plaintiff, the claim remained subject to the condition or agreement under the circumstances of this case.

[2] It was not possible for the Marine Oil Company to accept benefits to itself as a creditor growing out of a prior agreement, and afterward repudiate the agreement. There is a suggestive maxim: "It is equity that he should make satisfaction who received the benefit."

By the compromise which the Marine Oil Company entered into, it consented to the 67 cents on the dollar as the amount to be paid by the railroad companies.

This compromise and consent confirmed all that had previously been done by it.

[3] The contention of the plaintiff is that the receivers cannot take charge of the amount, that local creditors are entitled to the sum, and that it should not be transferred to the receivers.

In answer, we will state that plaintiff is not in a position to successfully invoke the rule that local creditors are entitled to a preference in view of the fact that previous to acquiring the right from the Marine Oil Company it had assigned its claim to the receiver, who holds not only as receiver but as assignee as well.

The Marine Oil Company novated its claim and accepted another debtor than its original debtor, Camp & Hinton Company, the insolvent corporation.

The property having been assigned to the receiver with full right to sue to recover the amount from the railroad companies and to do all necessary to collect the claim, it is not possible after this has been done for the creditor, the Marine Oil Company, to take an active part in the proceedings to assign its claim, and thereby change the situation of the debt.

[4] The creditor, the said Marine Oil Company, who was a local creditor, submitted to the jurisdiction of the court of Mississippi. It proved its claim before that court and consented to the assignment, as before stated, made to the receiver of the claim against the railroad companies, and, furthermore, consented to the indebtedness incurred by the receivers for account of the corporation in bankruptcy in the course of the management of the bankruptcy.

The presence and co-operation of the cred-

itor (the assignor of plaintiff, the Marine Oil Company) is binding upon him. The change proposed by plaintiff to transfer the issues to be decided by a local tribunal does not commend itself, viewed either in the light of jurisprudence or as an original proposition.

There is not only one interest, but a group of interests that should be administered together in the court of original jurisdiction in accordance with the agreement.

There was a right involved in the pursuit of which the creditor committed himself.

A change now would give rise to an expensive and anti-legal condition.

We have reviewed with some care the different authorities upon the subject.

In Ramsey v. Stevenson, 5 Mart. (O. S.) 23, 12 Am. Dec. 468, and Olivier v. Townes, 2 Mart. (N. S.) 101, the attachment was maintained, but the facts were different from those in the case here, in that in the cited case the creditor in the attachment proceedings had never submitted to the jurisdiction of the court of another state.

In Ramsey v. Stevenson, just above cited, the property of the bankrupts had been assigned to a receiver in Maryland. There was property situated in Louisiana, which was attached.

The court states that in that case the property had never been delivered to the receiver.

This is quite different from that case at bar in which there was delivery.

Furthermore, in the cited case, the creditors were not parties to the assignment, as was the Marine Oil Company in the case here.

The court in the cited case stated that the assignment could have no greater effect in relation to the creditors not parties to it than a sale to a bona fide purchaser, which, unless accompanied by delivery, does not fully divest the seller of his property,

and leaves it subject to seizure by his creditors.

Here it is entirely different. The claim was transferred, as before stated, and a complete surrender made with the consent of the holder.

In Thuret v. Jenkins, 7 Mart. (O. S.) 319, 12 Am. Dec. 508, the property attached had not been delivered, and the sale was not completed. For that reason, as it was a sale of no effect, the attachment was maintained.

All of this is not pertinent to the pending case in which there was a complete assignment and delivery, with consent of the creditors, as before stated.

In another case cited by learned counsel for appellant, the facts were that the assignment executed in Minnesota was available to pass personal property in another state as against persons domiciled in New York, who, subsequent to the assignment, had seized the property upon an attachment against an insolvent corporation.

The difference between this case and the one at bar consists in the fact that the property was at the place the attachment was issued and was not in the hands of a receiver, as in our case, in another state.

Security Trust Company v. Dodd, Mead & Co., 173 U. S. 625, 19 Sup. Ct. 545, 43 L. Ed. 835.

The creditors consented to the assignment. They not only consented to the assignment, but to the subsequent proceedings which resulted in recovering the claim after appearing before the interstate commission and after suits by the receiver in the federal courts.

In Bradford v. Tapan, 11 Pick. (Mass.) 78, the court said that the creditors who become parties to a deed of assignment are bound by it, while those not parties to the deed of assignment were not bound and could proceed by attachment.

The case of Willitts v. Waite, 25 N. Y. (Court of Appeals) p. 584, is well reasoned. The distinction between a voluntary surrender and the surrender in invitum is clearly drawn. As to voluntary surrender, which is a common-law right, possessed by every owner of property, and which may operate in one state as well as in another, the court held that the law of the domicile of the owner will control and gave it effect.

The court also held that it is different in a case of involuntary surrender. It is different as to devolution of title in an involuntary surrender.

In such a case the transfer depending upon positive law is only operative where such law prevails and is obligatory in the state in which there is such a law but is not extraterritorial in effect.

The property in one state does not pass by virtue of the law to a foreign state in a case of involuntary surrender.

Here parties concerned made themselves parties to the proceedings in insolvency.

The claims having been assigned with the consent of plaintiff's assignors, the property was not subject to seizure and sale at the instance of the Marine Oil Company, nor was it subject to its attachment; and for similar reasons plaintiff was without right to attach and garnish the claims.

[5] Unquestionably the receiver had possession of these claims.

Should we concede that the possession was temporary, he would still have the right to recover.

The receiver had possession for a number of reasons which we have before stated. He could not have brought the suits, which were brought and which resulted in recovering a judgment, if he had not been in possession.

Conceding for the argument that they had lost the possession under the authorities, the receivers would still be entitled to that possession. It being very evident that the re-

ceiver was at one time to say the least in possession, there are a number of authorities maintaining that the right of a receiver who has been in possession to resume that possession is undeniable, although the property has been taken to another jurisdiction.

It is a continuing right of possession of which he cannot be divested. It follows the property.

The right of possession is exclusive.

The following decisions leave no doubt in regard to the receiver's right of possession who has once been in possession. Pond v. Cooke, 45 Conn. 126, 29 Am. Rep. 668; Chicago & Milwaukee R. R. Co. v. Keokuk, 108 Ill. 317, 48 Am. Rep. 557; Lewis v. Adams, 70 Cal. 403, 11 Pac. 833, 59 Am. Rep. 423; Wilkinson v. Culver (C. C.) 25 Fed. 639; Merchants' National Bank v. Pennsylvania, 57 N. J. Law, 336, 30 Atl. 545; Humphreys v. Hopkins, 81 Cal. 581, 22 Pac. 892, 6 L. R. A. 792, 15 Am. St. Rep. 76; Ray v. Tatum, 72 Fed. 112, 18 C. C. A. 464.

Alderson in his book on receivers states that the foregoing decision sustains his view, and he goes so far as to say that the rule upon the subject of possession goes to the extent of precluding resident creditors in the state into which the property has been taken from seizing it under any judicial process.

He in the second place cited Woodhull v. Farmers' Trust Co., 11 N. D. 157, 90 N. W. 795, 95 Am. St. Rep. 712.

[6] If we were to hold after expenses have been incurred and proceedings had as in this case that the funds should be distributed here without regard to the right of other creditors, who acted co-jointly with the assignor of plaintiff, it would be allowing an inequitable advantage to be taken.

The right of the receivers of another state exists or grows out in this case of repeated approval by parties in interest.

While the rule is one of comity or curtesy, it is scarcely possible for a case to arise in which there is greater reason for compliance with the rule.

For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed.